Denise Coal Company, et al. v. Commissioner.
Denise Coal Co. v. Commissioner
Docket Nos. 56762-56764.
United States Tax Court
1958 Tax Ct. Memo LEXIS 124; 17 T.C.M. (CCH) 532; June 4, 1958
BLACK Order BLACK, Judge: On April 4, 1958, the respondent filed a "Motion to Reconsider and Revise Opinion" of our report filed December 24, 1957, . On consideration of the motion and the petitioners' objections thereto, and for the reasons stated in our memorandum to accompany this order, it is ORDERED: That the opinion (mimeographed copy), at page 40, line 6, [1] be amended by adding, after the words: "section 29.23(m)-2.", the following: "By cost of the land we mean the cost of the land overlying coal recoverable by the strip-mining method. If, for example, a 100-acre tract contains only 40 acres which has been and will be stripped, only 40 per cent of the cost of the 100-acre surface can be recovered by way of depletion. That portion *125 of the cost will be recovered as the surface is removed and actually destroyed in the process of extracting the coal." And it is - FURTHER ORDERED: That the Rule 50 computation respecting Issue 3 be made pursuant to our opinion and our memorandum to accompany this order. Memorandum to Accompany Order BLACK, Judge: On December 24, 1957, we filed our Findings of Fact and Opinion in these proceedings. Issue 3 involved the question of - (3) Whether portions of the cost of surface lands claimed to have been destroyed through stripping operations are deductible in the years when the stripping operations are conducted despite the fact that there was no sale or abandonment of the properties during those periods. Regarding that issue, we found that Denise acquired surface lands overlying the mineral deposits which it had the right to mine. The surface lands were acquired so that Denise would be able to extract the underlying coal by strip mining. After the coal was removed the acres actually stripped were worthless for the purpose for which Denise had acquired *126 them. Each year Denise estimated the percentage of each tract of land which it considered destroyed. In making the estimates, Denise considered the loss of roads, ditches, drains, and water facilities resulting from the stripping operations, the overflow of the spoil from the strip pits, the loss of water, the acid conditions resulting from the existence of the spoil banks, and the existence of buildings or other structures before and after the stripping. The coal remaining, if any, was also considered. The estimate of the portions of land destroyed did not coincide with the number of acres stripped. For example, 5 acres of a 100-acre tract might have been stripped, yet Denise might have estimated that 50 acres were destroyed. Denise applied the percentage of destruction arrived at to the original cost of each tract of land and arrived at an amount destroyed during each year. It deducted these amounts on its returns and claimed that it was entitled to such deductions under section 23(a)(1)(A) or 23(e) or (f). (See Schedule, p. 24, mimeographed copy [not reproduced].) The respondent disallowed the entire amounts claimed as deductions for property destroyed through stripping *127 operations, explaining such disallowances as follows: "(b) The deduction of [amount stated] claimed for 'Property destroyed by stripping operations' is disallowed in its entirety as this property (surface land) was not destroyed nor was it sold or otherwise disposed of in the taxable year." We held that the claimed deductions are not allowable under section 23(a)(1)(A) or 23(e) or (f) but that the cost of the land, meaning the cost of the land destroyed in stripping, should be added to the cost of the coal in determining the basis of the property for determining depletion allowable, following , and Regulations 111, section 29.23(m)-2. We directed that the depletion computation be made under Rule 50. The parties have not been able to agree on the amount of the depletion deduction allowable under our holding. Respondent on April 4, 1958, filed a "Motion to Reconsider and Revise Opinion," requesting us to reconsider our opinion respecting Issue 3 and revise it so as to determine what portions of the cost of said tracts of surface land are applicable to and includible in the basis of the mineral deposits involved in accordance *128 with Regulations 111, section 29.23(m)-2. We gave petitioners leave to reply to this motion. Such reply has been filed within the time granted and has been carefully considered. Petitioners state that the respondent's motion should be denied on the ground that the Court's opinion is clear; that a Rule 50 computation can be made pursuant to it, and that petitioners have submitted their Rule 50 computation to respondent but that respondent has refused to accept it. The principal point of dispute is whether the cost of the land means cost of the entire tract or cost of only a portion thereof. The record showed that only certain portions of each tract had been strip mined during the years involved. And, as we interpret , and Regulations 111, section 29.23(m)-2, the recoverable cost by way of depletion deductions, in so far as the land is concerned, is the cost of the portion of the surface overlying coal recoverable by the strip-mining method which is destroyed by the stripping process. That fact, it seems to us, is made clear in the last paragraph of the Manchester Coal Co. opinion, wherein it is said: "Under the facts here presented, where *129 the land itself is destroyed or the coal is mined, we think that the cost of the land should be added to the cost of the coal in determining the depletion allowable. * * *" [Italics supplied.] Evidently the phrase as used above "or the coal is mined" was meant to say "and the coal is mined." We so interpret it. Since our opinion heretofore filed is perhaps unclear in its interpretation of the Manchester Coal Co. case, we have revised it as stated in our order. We realize that there may be some damage to the unstripped portion of surface of the land due to acid conditions, overflow of spoil, and the presence of heavy machinery, etc. However, this damage is akin to the damage to surface lands in , pp. 433-434, where we held the loss in value to be nondeductible. The depletion allowance for the surface, which we are allowing here, is based solely on the fact that the surface is removed and totally destroyed in the process of extracting the coal. In order to resolve any further doubts as to how the depletion allowance for the surface should be computed, we provide the following examples: A tract containing 100 *130 acres was purchased for $15,000. The cost per acre is, therefore, $150. Forty of the 100 acres overlay coal recoverable by the strip-mining method. The portion to be added to the cost of the coal for cost depletion purposes is $6,000. Stated another way, $150 is treated as cost depletion for surface land for each acre of surface actually removed in the process of extracting the coal. If the number of acres overlying recoverable coal or the portion of each tract actually stripped is not known, the depletion allowance for the surface should be computed as follows: Divide the number of acres per tract into the cost of the tract to arrive at cost per acre. For every 4,000 tons of coal actually extracted from that tract the cost of one acre of surface should be treated as the amount of cost depletion for surface land destroyed. This computation is based on the testimony in the record to the effect that 4,000 tons of coal was the average yield per acre. (See Transcript, p. 43 [not reproduced].) An order will be entered revising our opinion respecting Issue 3 and the Rule 50 computation should be made pursuant to our direction herein. Footnotes
1. Line 29, page 551 of the monthly pamphlet. [Line 5, page 3455 in CCH 1957 Regular Decisions Transfer Binder.]↩